IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH CARBISIERO, | CIVIL DIVISION |
| Plaintiff, | Case No. 2:20-cv-1201 |
| v. | |
| SOUTHWEST HOTEL MANAGEMENT, | |
| Defendant. | |

## COMPLAINT AND JURY DEMAND

A.   *Preliminary Statement*

1.   The plaintiff Joseph Carbisiero brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of his right to be free from employment discrimination and retaliation based upon his gender. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B.   *Jurisdiction*

2.   The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3.   On or about November 14, 2018, the plaintiff timely filed a charge alleging harassment and discrimination with the Pennsylvania Human Relations Commission ("PHRC"), docketed at 201801412 and an amended charge was filed with that agency on or about December 10, 2019. The charge was subsequently cross-filed with the Equal Employment Opportunity Commission ("EEOC") and docketed at 17F202060246.

4.   The EEOC issued a Notice of Right to Sue on June 23, 2020.

5.  This complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C.  *The parties*

6.  The plaintiff is an adult individual who resides at 102 Longbridge Road, Ligonier, Westmoreland County, PA 15658.

7.  The defendant Southwest Hotel Management ("SHM" or the "company") is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district. The defendant maintains a place of business at 101 Gosai Drive, Bentleyville, Washington County, PA 15314.

8.  At all times material, the defendant employed more than fifteen employees.

9.  The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D.  *Factual Background*

10. The plaintiff was employed by SHM as Chief Engineer from August 2015 through August 23, 2018 at which time his job was terminated.

11. The plaintiff's duties as Chief Engineer involved maintenance, doing repairs, trouble shooting issues and providing security.

12. At all times relevant, the plaintiff performed the functions of his job competently and efficiently and was considered to be a satisfactory employee.

13. The plaintiff's supervisor was Brad Miller, Assistant Manager. The General Manager was John Kadash. The Director of Sales was Christie Girstner. She started in this position in approximately mid-2017. She worked at the same location as the plaintiff.

14. Starting in approximately early 2018, Girstner subjected the plaintiff to a sexually hostile work environment. Some examples follow:

   (a) Girstner often made explicit sexual comments to the plaintiff, including comments about sexual intercourse, penises and vaginas.

   (b) Girstner repeatedly told the plaintiff that she had "no love life" and that the last man she dated didn't care if she "got off" during sex and that he was a "two-pump-chump", meaning that he could not sustain an erection for a sufficiently long period of time before climaxing during sex.

   (c) Girstner told the plaintiff about her sexual preferences, her thoughts about female orgasms, and that the last man she dated could not find her "spot" and that he did not satisfy her sexually as a result.

   (d) Girstner often discussed various aspects of sex and the sexual activities she "enjoyed", including the use of sex toys, including dildos and vibrators.

   (e) Girstner seemed to make a point at staring at the plaintiff's crotch when they were having discussions and when he had to walk into her office. It was so obvious and awkward that the plaintiff often said to her, "Hey, Christie, eyes up here", as he pointed to his face.

   (f) Girstner made comments about the plaintiff's penis. She also made comments that Italian men (the plaintiff is of Italian descent) are usually not circumcised in an effort to find out whether he was or was not circumcised.

   (g) Girstner made sexual gestures towards the plaintiff, including gestures with her hands and mouth simulating oral sex.

   (h) Girstner often made it a point to stand very close to the plaintiff when she was talking to him, invading his personal space. She also would touch him while standing very close. The plaintiff was so uncomfortable that he would often back up to try to put distance between them, but she would just move forward so that her body was in close physical proximity to his.

   (i) Girstner engaged in inappropriate unwanted sexual touching and contact including touching his arm, shoulder and back and slapping his buttocks.

   (j) Girstner asked the plaintiff to come to her house, ostensibly to look at a side-job that she wanted him to do. When he said that he would bring his son with him to look at the work that she wanted done, she said that he wouldn't need his son, and that she wanted him to come to her place alone. The plaintiff believed that she was propositioning him for sex and that the "side-job" was just an excuse to get him alone at her place.

3

(k)   Girstner engaged in many conversations that were laced with sexual innuendo. For example, the plaintiff found a stray cat at the property and would give it food from time to time. Girstner would say things like, "Hey, Kelsey (a female employee), did Joe show you his pussy?"; "Joe, did you check on your pussy today?"; "Joe has a pussy in his pocket"; "Joe, if you move your office in here with us (referring to another female employee) you can bring your pussy"; and "why wouldn't you want to work in an office full of pussies". She just wouldn't let things like that drop.

(l)   Girstner also engaged in very direct and vulgar sexual conversations. For example she asked the plaintiff if he knew what "queefing" was and explained in great detail the particular way some women can "suck in" and expel air from their vaginas at will and the sounds that result.

15.   The plaintiff reported the sexual harassment to management. In approximately mid-March 2018, he talked to Carol Woodward, Housekeeping Manager and told her that he felt uncomfortable being alone with Girstner and asked her to accompany him to a meeting that he had to have with Girstner.

16.   In approximately late-March 2018, he told Seanna Bell, Front End Manager, Beth Huttshmidt, Human Resources, and Brad Miller that Girstner was sexually harassing him and asked them to do something about the situation.

17.   Girstner had not changed her behavior so in approximately late-May 2018, the plaintiff met with Miller and Kadash and again asked that something be done to curb Girstner's sexual harassment. Kadash scoffed at the plaintiff and asked if he thought he was some sort of Casanova or Don Juan. He also asked the plaintiff why he was complaining about Girstner's conduct. He asked, "why are you complaining about this; she's hitting on you; you should be happy that a female is attracted to you." The plaintiff assured Kadash that he was serious about this situation, and Kadash responded by saying that he would talk to her but warned the plaintiff "you'll be better off if you work with her, not against her".

4

18. Girstner's conduct seemed to subside shortly after the plaintiff's discussion with Kadash and Miller, but she did not stop entirely, and, instead after a short period of time, she continued the harassment and became more hostile towards the plaintiff.

19. After complaining to Kadash and Miller, the plaintiff was subjected to heightened scrutiny in the performance of his job by Girstner and Kadash. Some examples follow:

(a) Girstner scrutinized the plaintiff's work even though he did not report to her. She found fault with his work and reported it to Kadash.

(b) On multiple occasions, Girstner questioned when the plaintiff came to work and how many hours he worked per day.

(c) Girstner sent an email to the plaintiff, pretending to be Miller while Miller was on vacation. In this "fake" email, Girstner made a disparaging comment about a previous work issue. Thinking that Miller was making a nasty statement about his work, the plaintiff responded defensively. Girstner realized that perhaps she had gone to far with this prank, so she confessed that she and not Miller had sent it and that Kadash had put her up to it as a joke.

(d) On repeated occasions, Girstner reported to Kadash that the plaintiff had violated various company rules and policies in an attempt to get him disciplined and/or terminated.

20. In August 2018, Girstner and Kadash accused the plaintiff of stealing when money was missing from the front desk. The plaintiff had not stolen any money and there was no proof that he had done so. Further, two female employees, Liz Wiess and Huttshmidt also worked the front desk when there were discrepancies involving missing funds, but they were not investigated or terminated.

21. The plaintiff's employment was terminated as a result of this trumped up and false allegation.

22. The reason given for the plaintiff's termination was nothing more than a pretext and the real reason why he was fired was because of his gender and in retaliation for raising complaints about sexual harassment with management.

## **FIRST CAUSE OF ACTION**

23. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

24. The plaintiff is male and thus is protected against harassment and discrimination on the basis of his gender under Title VII.

25. The plaintiff was qualified for his position.

26. As detailed above, the plaintiff was harassed in the workplace because of his gender.

27. As detailed above, the plaintiff was retaliated against for making complaints about sexual harassment.

28. The defendant's harassment and discharge of the plaintiff were in violation of Title VII because it was based upon his gender.

29. Further, the plaintiff's employment was terminated in retaliation for reporting to management that he was being subjected to sexual harassment.

30. The defendant's violations of Title VII were committed with intentional or reckless disregard for the plaintiff's federally protected rights.

## **SECOND CAUSE OF ACTION**

31. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

32. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination, harassment and retaliation under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

33. The defendant's violations of the PHRA were committed with intentional or reckless disregard for the plaintiff's protected rights under the PHRA.

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306
2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 281-8676
Counsel for the plaintiff

Dated: August 13, 2020